UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MOHAMED ABDOU,**

                             Case No.

        Plaintiff,

vs.                            Hon.

**EDUCATION MANAGEMENT AND
NETWORKS INCORPORATED** and
**AHMED SABER,** jointly and severally,

        Defendants.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

_____/

**<u>COMPLAINT AND DEMAND FOR TRIAL BY JURY</u>**

There is no other civil action pending in
this Honorable Court or any other Court
arising out of the same transaction and
occurrence.

      **NOW COMES** Plaintiff, **MOHAMED ABDOU,** for his Complaint against

Defendants Education Management and Networks Incorporated and Ahmed Saber,

stating the following:

## INTRODUCTION

1.     Plaintiff Mohamed Abdou, a homosexual asylee, fled torturous treatment in Egypt to start a new life in America.  In January 2020, Abdou began his employment with Education Management and Networks Incorporated, a private company which services and staffs several predominantly Arab Muslim charter schools in the Detroit area. Plaintiff kept his sexuality hidden due open homophobic sentiment harbored by EMAN's leadership. Abdou was a valued employee, however, things drastically changed for the worse after Plaintiff was "outed" as homosexual by a coworker. After, Plaintiff was sexually harassed, insulted, threatened, and explicitly told he needed to change.  Plaintiff reported his harassment but was told to drop his complaints as things would only worsen if EMAN's owner and president, Ahmed Saber learned of Plaintiff's homosexuality.   Ultimately, Saber was notified of Plaintiff's sexual orientation and terminated him.

Within this complaint, Plaintiff alleges that he was terminated in violation of his rights afforded under Title VII of the Civil Right Act of 1964, 42 U.S.C. §2000 *et seq.,* and Michigan's Elliott-Larsen Civil Rights Act.

## PARTIES

2.     Plaintiff Mohamed Abdou is an individual who resides in the state of Michigan.

2

3.      Defendant Education Management and Networks Incorporated is a domestic profit corporation organized under the laws of the State of Michigan and operates within the Eastern District of Michigan.

4.      Defendant Ahmed Saber is an individual, as well as the owner and registered agent of Defendant Education Management and Networks Incorporated. Upon information and belief, Mr. Saber resides within the Eastern District of Michigan.

5.      At all times relevant herein, Defendants acted by and through their agents and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## JURISDICITON AND VENUE

6.      This Court has original jurisdiction under 28 U.S.C. § 1331 because Plaintiff has raised Federal Claims under Title VII of the Civil Right Act of 1964, 42 U.S.C. §2000 *et seq.*

7.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

8.      This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

9.      At all times relevant hereto, Plaintiff performed work for Defendants in the Eastern District of Michigan.

10.     The amount in controversy exceeds $75,000, exclusive of costs, interests, and attorney fees.

## GENERAL ALLEGATIONS

11.     Plaintiff Mohamed Abdou ("Plaintiff") is a member of a protected class based on his gender and sexual orientation, a gay man.

12.     Plaintiff is an asylee born Muslim in Egypt. Plaintiff was granted asylum in 2018 due to torture he was subjected to as a suspected gay man.

13.     Defendant Education Management and Networks Incorporated ("EMAN") is a full-service management company servicing charter schools in the State of Michigan.

14.     On information and belief, EMAN services and has staff at eight charter schools within the metro-Detroit area, including, but not limited to, Oakland International Academy and Caniff Liberty Academy.

15.     EMAN has a predominantly Arab Muslim student and staff population although it is not a religious institution.

16.     On information and belief, there are no openly LGBT+ employees at EMAN.

17.     Defendant Ahmed Saber ("Saber") is the Founder and President of EMAN.  Saber is a Egyptian born Muslim.

18.     Saber has significant control and influence of the hiring, firing, and discipline at EMAN.

19.     Defendant Saber has stated to employees of EMAN that EMAN would not have homosexual teachers; nor would EMAN discuss, promote, or acknowledge homosexuality.

20.     In January 2020, Plaintiff began his employment with EMAN.  Initially, Plaintiff worked as an ESL Coach at Oakland International Academy.

21.     At the time of his hire and early employment, Defendants were unaware that Plaintiff was homosexual.  Nor did Plaintiff inform Defendants or his supervisors that he is homosexual.

22.     At the time of his hire, the principal at Oakland Academy was Conrad Koch ("Principal Koch").

23.     Plaintiff's initial contract with EMAN ended in June 2020.  After, Plaintiff entered a second employment contract with Defendants to work through June 2021.

24.     During the winter of 2021, Plaintiff was "outed" as being homosexual by a coworker, Candice Esper[1] ("Esper").

25.     After being "outed", Plaintiff's work environment changed dramatically for the worse.

26.     Notably, coworkers began to talk openly about Plaintiff being homosexual.

---

[1] This coworker later stated that she didn't understand the gravity of her actions of outing Plaintiff as homosexual at the time.

27.     Plaintiff was confronted by two coworkers, Mr. Akil and Mr. Ghiriani, about being homosexual who referred to Plaintiff as a "faggot" and that he doesn't dress as a man should. Plaintiff was also told by coworkers that he was a "poor role model" for students because he is homosexual."

28.     In one instance, Mr. Akil reached and tried to physically touch the Plaintiff. The incident was witnessed by Principal Koch who simply responded "this is not funny" without further discipline or admonishment.

29.     In another incident, Mr. Akil approached Plaintiff from behind while he was at the gym with headphones on and pushed him to the ground.

30.     Plaintiff was also told by coworkers that homosexuality is against Sharia law and is something that he could be killed for.[2]

31.     Plaintiff reported his treatment to Principal Koch.

32.     Principal Koch met with Plaintiff and Esper to discuss Plaintiff's perceived discrimination.  During the meeting, Esper admitted that she had informed others that Plaintiff is homosexual.  At the meeting, Principal Koch implored Plaintiff to drop the issue because if he turned in Plaintiff's complaint then Plaintiff would be terminated when Defendant Saber learned Plaintiff is homosexual.

---

[2] Notably, Plaintiff is acutely aware of this sentiment having survived a litany of horrors, including death threats, beatings, and anal virginity tests, as a suspected homosexual in Egypt.

33.     In another instance, Plaintiff requested to wear a dress to work. Principal Koch responded that, if he did, Koch would send him home and Saber would fire him.

34.     Plaintiff signed a third employment contract with Defendants in June 2021 to work through June 2022.  On information and belief, Plaintiff would continue to be employed with Defendants indefinitely as a valued employee without significant discipline.

35.     On or around June 17, 2021, Principal Koch was replaced by a new principal, Mohamed Elnatour ("Principal Elnatour") at Oakland International Academy.

36.     On information and belief, Principal Elnatour is a very religious Muslim man and speaks freely about his hostile feelings towards homosexuality.

37.     On information and belief, Principal Elnatour was informed that Plaintiff was homosexual by Mr. Akil and Mr. Ghiriani.

38.     Upon learning that Plaintiff is homosexual, Principal Elnatour would openly insult Plaintiff stating that Plaintiff is a "bad person" and "needs to change" who he is due to being homosexual.

39.     Principal Elnatour told Plaintiff that he should quit and find an engineering job instead of working in schools because he had already told Defendant Saber that Plaintiff is homosexual.

40.     On information and belief, Principal Elnator did notify Defendant Saber that a homosexual man, specifically Plaintiff, was employed at EMAN.

41.     Shortly, after an employee had a medical issue for which Plaintiff tried to assist.  Both the employee and Plaintiff were asked to write statements about the incident to human resources.  In front of the employee, Principal Elnatour stated that he intended to characterize the incident in a manner that would get Plaintiff fired.

42.     In another instance, Principal Elnatour announced to Plaintiff and a group of his coworkers that he would figure out a way to get Plaintiff terminated.

43.     Following this and other harassment, Plaintiff submitted a complaint of discrimination to EMAN's human resources department.

44.     Shortly after his complaint of discrimination, Plaintiff was written up for misconduct and moved to another building, Caniff Liberty Academy ("Caniff"). Plaintiff was notified that the write up was for "engaging in political arguments." However, it was clearly done because he was homosexual and had reported Principal Elnatour.

45.     The principal at Caniff was Mr. Cowger ("Principal Cowger")/

46.     Early into his time at Caniff, it was obvious that he was being set up to fail. He was placed in extremely unfavorable classroom environments and on lunch duty.

47.     Also, for the first time, Defendants began to question Plaintiff on the legitimacy of his college degree in Egypt.

48.     On or around October 28, 2021, Plaintiff noticed Defendants' superintendent walking down the hall with Principal Cowger.  Plaintiff heard Principal Cowger state "there he is" to which the superintendent responded "ahhh that's him."

49.     On October 29, 2021, Plaintiff was told to go to the office to meet with his Principal Cowger and human resources.  At the meeting, Plaintiff was notified that he was terminated because "the kids do not like him." Further, that the decision to terminate him came directly from Defendant Saber. Plaintiff stated that he believed his termination to be discriminatory and retaliatory to which Principal Cowger and HR responded that they "did not know him well enough to agree or disagree with Saber's decision."

50.     On information and belief, the individual currently performing the duties previously held by the Plaintiff is not homosexual.

51.     In November 2021, Plaintiff timely filed a charge of sex and sexual orientation discrimination, as well as retaliation, with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). On May 18, 2022, The EEOC issued Plaintiff the right to sue under these claims.

## COUNT I
## SEXUAL ORIENTATION DISCRIMINATION/HARASSMENT
## TITLE VII, 42 U.S.C. § 2000e, *et seq*.

52.     All preceding paragraphs are incorporated by reference.

53.     At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq*.

54.     Plaintiff is a member of a protected class due to his sexual orientation, a homosexual man.

55.     Defendants unlawfully discriminated against Plaintiff due to his sexual orientation.

56.     Defendants sexually harassed Plaintiff and failed to take action to prevent sexual harassment against Plaintiff due to his sexual orientation.

57.     Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment, relocation, disciplinary actions, and termination due to his sexual orientation.

58.     Defendants treated Plaintiff different than similarly situated employees who were not homosexual.

59.     Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

60.     Defendants' conduct and comments were severe and pervasive enough to create an objectively hostile or abusive work environment.

61.     Defendants' discriminatory treatment of Plaintiff amounts to sexual harassment as Defendants made or tolerated sex-specific and derogatory terms in a

manner that harbored a hostile work environment and demonstrated that Defendants are motivated by hostility to the presence of homosexual men in the workplace.

62.     Defendants' discriminatory conduct and comments were severe and pervasive enough to interfere with Plaintiff's work performance.

63.     Defendants were aware of extreme harassment and abuse Plaintiff was facing and failed to act or otherwise inadequately addressed the situation.

64.     The hostile work environment alleged was carried out by and/or were the direct result of the actions of Plaintiffs' supervisors and the supervising bodies of Defendants.

65.     Plaintiff alleges that the hostile work environment is in violation of his rights pursuant to 42 U.S.C. § 2000e *et seq*.

66.     Plaintiff's sexual orientation was a factor that made a difference in Defendants' discriminatory decision to discipline him, transfer him, and ultimately terminate him.

67.     Plaintiff has obtained his right to sue pursuant to Title VII through the EEOC. (***Exhibit A***)

68.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the

ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT II
## GENDER DISCRIMINATION/HARASSMENT
## TITLE VII, 42 U.S.C. § 2000e, *et seq*.

69.    All preceding paragraphs are incorporated by reference.

70.    At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq*.

71.    Plaintiff is a member of a protected class due to his gender.

72.    Defendants unlawfully discriminated against Plaintiff due to Plaintiff's nonconformity with perceived gender stereotypes associated with men.

73.    Defendants verbally and physically sexually harassed Plaintiff and failed to take action to prevent sexual harassment against Plaintiff due to his non-conformity with gender stereotypes.

74.    Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment, relocation, disciplinary actions, and termination due to his non-conformity with gender stereotypes.

75.    Defendants treated Plaintiff different than similarly situated employees who conformed to perceived gender stereotypes associated with men.

76.    Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

77.    Defendants' conduct and comments were severe and pervasive enough to create an objectively hostile or abusive work environment.

78.    Defendants' discriminatory treatment of Plaintiff amounts to sexual harassment as Defendants made or tolerated sex-specific and derogatory terms in a manner that harbored a hostile work environment and demonstrated that Defendants are motivated by hostility to the presence of men who do not conform with perceived gender stereotypes in the workplace.

79.    Defendants' discriminatory conduct and comments were severe and pervasive enough to interfere with Plaintiff's work performance.

80.    Defendants were aware of extreme harassment and abuse Plaintiff was facing and failed to act or otherwise inadequately addressed the situation.

81.    The hostile work environment alleged was carried out by and/or were the direct result of the actions of Plaintiffs' supervisors and the supervising bodies of Defendants.

82.    Plaintiff alleges that the hostile work environment is in violation of his rights pursuant to 42 U.S.C. § 2000e *et seq*.

83.    Plaintiff's gender was a factor that made a difference in Defendants' discriminatory decision to discipline him, transfer him, and ultimately terminate him.

84.     Plaintiff has obtained his right to sue pursuant to Title VII through the EEOC. (*Exhibit A)*

85.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT III**
**SEXUAL ORIENTATION DISCRIMINATION/HARASSMENT**
**ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.***

86.     All preceding paragraphs are incorporated by reference.

87.     At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

88.     Plaintiff is a member of a protected class due to his gender and sexual orientation, a homosexual man.

89.     Defendants' discriminatory conduct and comments were severe and pervasive enough to interfere with Plaintiff's work performance and create a hostile work environment.

90.     Defendants took no action based on this discriminatory conduct even though it received complaints from Plaintiff about the harassment and hostile work environment.

91.     Plaintiff's sexual orientation was a factor that made a difference in Defendants' discriminatory decision to discipline, transfer, and ultimately terminate him.

92.     Defendants treated Plaintiff different than similarly situated employees who were not homosexual.

93.     Defendants' discriminatory treatment of Plaintiff amounts to sexual harassment as Defendants made or tolerated sex-specific and derogatory terms in a manner that harbored a hostile work environment and demonstrated that Defendants are motivated by hostility to the presence of homosexual men in the workplace

94.     Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

95.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT IV
## GENDER DISCRIMINATION/HARASSMENT
## ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

96.    All preceding paragraphs are incorporated by reference.

97.    At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*

98.    Plaintiff is a member of a protected class due to his gender and non-conformity with associated gender stereotypes.

99.    Defendants' discriminatory conduct and comments were severe and pervasive enough to interfere with Plaintiff's work performance and create a hostile work environment.

100.   Defendants took no action based on this discriminatory conduct even though it received complaints from Plaintiff about the harassment and hostile work environment.

101.   Plaintiff's gender, and perceived gender stereotypes, were a factor that made a difference in Defendants' discriminatory decision to discipline, transfer, and ultimately terminate him.

102.   Defendants treated Plaintiff different than similarly situated employees who conformed to perceived gender stereotypes associated with men.

103.   Defendants' discriminatory treatment of Plaintiff amounts to sexual harassment as Defendants made or tolerated sex-specific and derogatory terms in a

manner that harbored a hostile work environment and demonstrated that Defendants are motivated by hostility to the presence of men who do not conform with perceived gender stereotypes in the workplace.

104.    Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

105.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT V
## RETALIATION - TITLE VII, 42 U.S.C. § 2000e

106.    All preceding paragraphs are incorporated by reference.

107.    Plaintiff engaged in activity protected by Title VII, 42 U.S.C. § 2000e *et seq*. when he complained of unequal treatment based on his sexual orientation and the harassing comments he was subjected to regarding his sexual orientation.

108.    Defendants failed to investigate Plaintiff's complaints of discrimination/hostile work environment and being indifferent to same.

109.    Defendants failed to take remedial measures with respect to discrimination/hostile work environment.

110.   Because he engaged in this protected activity, Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment, discipline, transfer, and termination.

111.   Defendants terminated Plaintiff in retaliation of his protected activity.

112.   Defendants' retaliatory actions violates Title VII, 42 U.S.C. § 2000e *et seq.*

113.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT VI**
**RETALIATION**
**ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.***

114.   All preceding paragraphs are incorporated by reference.

115.   Plaintiff engaged in protected activity when he complained of unequal treatment based on his sexual orientation and the harassing comments he was subjected to regarding his sexual orientation.

116.   Defendants failed to investigate Plaintiff's complaints of discrimination/hostile work environment and being indifferent to same.

117.    Defendants failed to take remedial measures with respect to discrimination/hostile work environment.

118.    Because he engaged in this protected activity, Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment, discipline, transfer, and termination.

119.    Defendants terminated Plaintiff in retaliation of his protected activity.

120.    Defendants' retaliatory actions violates ELCRA.

121.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.    Declare that the aforementioned practices and actions of Defendants constitute unlawful practices in violation of Title VII and ELCRA;

b.    Award Plaintiff all lost wages and benefits, past and future, to which he is entitled;

c.    Award Plaintiff appropriate equitable relief;

d.    Award Plaintiff compensatory damages;

e.      Award Plaintiff punitive damages;

f.      Award Plaintiff reasonable attorney fees, costs and interest; and

g.      Award such other relief as this Court deems just and proper.

Respectfully submitted,

By:  /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC
*Attorney for Plaintiff*
PO Box 44855
Detroit, MI 48244
(313) 246-3590

DATE: May 20, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MOHAMED ABDOU,**

        Case No.

        Plaintiff,

vs.        Hon.

**EDUCATION MANAGEMENT AND
NETWORKS INCORPORATED** and
**AHMED SABER,** jointly and severally,

        Defendants.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

_____/

## DEMAND FOR TRIAL BY JURY

Plaintiff Mohamed Abdou hereby demands for a trial by jury.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC
*Attorney for Plaintiff*
PO Box 44855
Detroit, MI 48244
(313) 246-3590

DATE: May 20, 2022